May it please the Court, Katherine Barrett Wick, Robbins Kaplan, LLP, for the Best Buy Appellants. In numerous opinions over the past decades, the United States Supreme Court has recognized the critical role that private antitrust litigation plays in the enforcement of our nation's antitrust laws. Part of that regime, both at the federal level under the Sherman Act and the damages provision under the Clayton Act and the Minnesota Antitrust Act, is ensuring that plaintiffs who are injured by cartels are able to recover fully for their injury. Well, counsel, let me just cut to the chase here. Your client got 1% of what it asked for and yet 20% of the fees it asked for, and although there was some discussion or chat, if you will, about whether the offset and the settlements with other plaintiffs mattered, it seems to me that at bottom what the court was saying was you had really tiny success and so we're going to give you less. Is there anything wrong with that reasoning, that for limited success you get limited fees? In the way that that conclusion of limited success was reached here, which was only through considering the settlement offsets, yes, absolutely. Well, it wasn't only through that. There was a lot of also the percentage amount that you succeeded was about 1%, right? You asked for, I can't remember now, $800 million and you got less than $8 million. Well, at the trial, you got teeny tiny and small success. In the litigation as a whole, the result, which the settlements for the co-conspirators that did settle, did involve both direct and indirect claims, just like the claims that were tried. So I feel like the special master or doctor by the district court is trying to sort of have it both ways. They're saying Best Buy achieved nothing and only reached 1%. So in that, because they've applied the settlement offset to hold no additional compensatory damages at this trial. But you did only get 1% without considering the offset, right? You got zero after the offset, right? But you got less than $8 million from the jury. That's correct. Given that the defense to the indirect purchaser's purchase claim was allowed, that was part of why there was zero on the indirect. Okay. Now, let me ask this, and I know you don't accept the premise of this, but let's assume that we were to conclude that only the parent company, Best Buy, proved that it was harm, that the individual amounts that were attributable to the other subsidiary entities were not demonstrated. If you had one out of six plaintiffs that prevailed, would that at least in theory reduce or potentially reduce the amount of fees? Not if all of the damages coming from the subsidiaries were captured by the parent. You wouldn't then also back out four or five unsuccessful plaintiffs. I mean, if Best Buy has proven its injury, as it has here, as demonstrated both from the settlements and from the verdict that it's been injured, it is entitled under the Clayton Act, Section 4A, and the Minnesota Antitrust Act to be made whole. And we see, as I would encourage the court to look at the law on point from the Fifth and Third Circuit, which the special master noted is dead set against Hanstar's position here, that a party who has proven an injury is not able to recover attorney's fees because there's no additional recovery of damages only when there's a consideration of offsets with co-defendants. And that's exactly what happened here. So we had that recognition by the special master that Skiambra, Gulfstream, funeral consumers in the Third and the Fifth, that those approaches are consistent with the broad media purpose of the Sherman Act and the Clayton Act. And then if you look at page 16 of the special master's report, he backed out small portions of the damages, or excuse me, of the fees for other individual arguments that Hanstar had made, things related purely to Toshiba, there's some other deductions, but then concluded that there were $8.6 million of attorney's fees and did consider Hanstar's claims that for a variety of reasons, those fees, those $8.6 million were not reasonable, saying that there were too many lawyers, their rates were too high, they block billed, they worked nights and weekends. And the judge said, this is a complex case, this is a big case, it happened over a number of years, and that $8.6 million in fees is reasonable given this case and this complexity. And that finding of reasonableness, that is what then we look at to look at the Sherman Act, the Section 4A of the Clayton Act, and the Minnesota Antitrust Act. And because Best Buy proved that it was injured, both of those statutes have mandatory language. They shall recover the reasonable fees. I think I missed your answer to Judge Graber's question. If the other four or five subsidiaries were not, if we find that you didn't prove injury, that those other four or five subsidiaries did not prove injury, and then you only have one prevailing party or one prevailing plaintiff, then the Clayton Act wouldn't apply because it has to be someone who has been injured through the course of their business, right? Or how would you reconcile the two? I think they're, I'm wondering if there's some confusion about what, when throughout the trial the term Best Buy was used, that term was being used by the witnesses, the plaintiffs, all of the plaintiffs collectively, not just, it did not mean the parent company. It meant the collective Best Buy plaintiffs. And that's how all the evidence came in. That's how it was analyzed by Honstar's experts as well as ours. And so we have that cumulative injury that if those entities, those were all the entities that had purchased in the United States priced fixed goods, because all of those, they wouldn't have been in the collection of data of priced fixed goods if they hadn't made those purchases. So there was a, yes, it was a collective, there was not a breakdown of what percentage each of them had made. Well, what was the point, I mean, I guess this is not on the record or not maybe a relevant question, but what is the point, then, of having the subsidiaries, if it's all collective and it's all purchased by the parent in Minneapolis, I'm not really sure why we have this sort of amorphous collection, because there's no breakdown as to each subsidiary, how many TVs they bought or whatever. It's not that they're all purchased. They're not all purchased by the parent. They're purchased by various subsidiaries because of complicated, you know, business decisions about which entities make which purchases from which counterparties. But if they're separately purchased, what is the problem, if any, if there's no separation in the proof? There is no problem, because there's no double counting. It's simply, it has to do with how the data of all of the subsidiaries is tracked through a centralized database, and that But each one has to prove damage. So unless you have somebody saying each one of the, saying specifically each of these subsidiaries is harmed, or do we just assume that? No. But that is what the testimony of Ms. Fritz supports. She testified, when she used the phrase best buy, she was talking about the collective plaintiff entities, which were the best buy entities who had purchased the price-fixed goods in the United States. So that testimony, that those entities, and we also have that through the expert Bernheim, that those plaintiff entities had purchased price-fixed goods, it was presented collectively. And there has never been any allegation at any stage that there was any double counting, that the same, because it was based on SKU number. So there's no allegation, the claim and the critique from Hanstar is that we didn't say how those different, what percentage of the harm was sustained by what best buy subsidiary. And that's not an argument that was raised until the very end of trial. So our witnesses went on, both fact and expert, theirs went on, everyone was talking about this collectively, and there was never any, you know, no cross-examination of this issue, no objections that they were being admitted collectively. It's simply how the data, the sort of starting from the e-discovery perspective, how the direct and indirect purchases in this case, how it was stored by Best Buy. I do want to move on to my cost issue, which is at its heart an eerie issue. So what we had in this instance was the special master, which was then adopted by the district court, looking at Best Buy's claim for expert witness fees as part of its entitlement to costs and disbursements under the Minnesota Antitrust Act. And what happened here, following the case of the Seve's, where in that case there was a California procedural cost statute and the federal procedural cost statute. And given in that instance the choice of law was between state and federal procedural law, this court appropriately said federal procedural law governs. What we have in this instance is not that. We have Claussen. We have a situation where the Minnesota legislature, in adopting a belt and suspenders approach and providing broad remedies to injured parties, has included this very long, extensive remedial provision which allows for costs and disbursements. So the analysis of whether and how much costs in terms of expert witness fees should be analyzed under Minnesota law, and that did not happen here. But if you do analyze it under Minnesota law, it's not specific that the expert fees are covered under damages. It's very different from the oil spill case, the Ninth Circuit case, the Claussen case. The statute in the Claussen case talks specifically and gave an express indication that the damage damages would include expert fees, and we don't have that in the Minnesota statute. We don't have a definition, you're correct that we do not have a definitions provision that defines damages in the Minnesota statute. What we have is a statute, 325D.57, that is clearly the remedies provision of the Minnesota Antitrust Act, and when you do a contextual analysis of the components of a plaintiff's case, you have the inclusion of, in addition to the treble damages, costs and disbursements including reasonable attorney's fees. And yes, you are correct, the Minnesota Supreme Court, that phrase, no Minnesota court has ever interpreted this exact question. Does that phrase, costs and disbursements, allow expert witness fees? That has not been determined in the context of this statute, but it has been determined in the context of other statutes which we outlined in our briefing, and in several other statutes, where the phrase, costs and disbursements, is present, and some other statutes where just costs is present, Minnesota courts have allowed expert witness fees because of the recognition that that's something that parties need to do to prove an antitrust injury. And if there's no other questions, I'd reserve my remaining time. You may reserve the time. Thank you. Ms. Lee? Good morning again, Your Honors. I'd like to start. Introduce yourself. It's a different case. Okay. Good morning, Your Honors. May it please the Court. Belinda Lee, representing Appley Honstar Display Corporation. I'd like to start by addressing first the issue of attorney's fees. The issue of what a reasonable attorney's fee is, is grounded soundly in the trial court's discretion. In this instance, we had a recommendation made first by the special master and then ratified by the district court judge. These were two judicial officers who had overseen this litigation for many years. At that point, I think it was seven years or so that this case had been going on in the district court. And so they are the ones who are in the best position to determine what is a reasonable attorney's fee in this instance. And through a lengthy discussion in his recommendation, the special master recounted – went through a number of factors that he considered and then weighed and some – rejected some and accepted some and arrived at 1.75 as the reasonable attorney's fee. And there's – and the Best Buy plaintiffs have not demonstrated any reason why we should sit here today and second-guess the trial court's discretion in that regard. As we – you were talking just before about Best Buy and damages. I looked to the – I tried to pull up the record on that database of Best Buy's purchases. And I don't know if Your Honor still has any questions about them. But I was – I was looking at that to try and determine whether there was any specificity with Ms. Fritz's testimony about Best Buy and what their damages were. And again, her testimony starts at ER – this is actually – I'm sorry, I'm looking at the experts of record from the first appeal, but it's ER 243. That's where her testimony begins. And she just identifies herself as a Best Buy employee with no specification and then just says that – that Best Buy purchased about $32 billion in revenue on TVs, laptops. And she then later goes on to talk about that as the approximation of the amount Best Buy has spent to buy products. That's all there is in terms of that database. Turning to the – Yeah, with the fees question, do – did – is it clear whether or not the Special Master and or the district court used the offset to reduce the attorney's fees? Your Honor, I don't – I don't think they did. If they were going to offset the fees, then the fees would have been all the way down to zero. Because if you're going to offset, there was such a large offset that it would have just wiped out the attorney's fee. So is there – I've been trying to determine whether they – the language in the decision that talks about and in the end they recovered zero after the offset, whether that's just – whether that's an actual offset, which probably wouldn't be proper, or whether that's just saying, and they recovered nothing. So that's a typical kind of rationale for lowering attorney's fees is the amount of the recovery or the net result. Right. I think, Your Honor, that that was just the Special Master's way of noting that they recovered very little in the outcome of the trial. And in dollars amount, in actual damages, they recovered less than the attorney's fee that they were requesting. And that's what we found unreasonable.  It was almost a little bit of – after sort of a little frustration and it kind of was a little bit of a waste to spend six years in litigation to ultimately get zero in damages. Your Honor, yes, I think so. And it's – this is an instance where the majority of the trial was spent trying to fix liability on someone else, not even my client, and they failed. And so in light of all of that, in light of the outcome of the trial – remember, this was a trial where my client from the very beginning admitted liability. The only thing was damages. That was the only thing that we were debating. And so when they – as Judge Graber, as you pointed out, when the Best Buy plaintiffs achieved only 1 percent of the $800 million in damages that they were asking for, it was within the district court's discretion. It looked to me like Toshiba was kind of the big target and then it was found not to have been a co-conspirator at all. Right. Right. And it's that failure to find them the co-conspirator that brings in all of those other evidentiary issues from the first appeal that we were just talking about. But it also is a basis for reducing the attorney's fee. And it was within the district court's discretion to do so. Okay. If you have no more questions on fees, I can turn to costs next. Okay. Your Honors, the issue of costs and disbursements and whether expert witness fees are allowable under Minnesota state law, the trial court correctly applied federal procedural law to deny the recovery of non-taxable expert witness fees. This is all a little bit of an academic point, though, because the Best Buy plaintiffs are arguing that expert fees should be part of the substantive recovery under the Minnesota Antitrust Act. We think that's wrong for a number of reasons and we explain in our papers how cost and disbursements is procedural under Minnesota law. But it's almost an academic point, though, because if they are a substantive part of your damages under Minnesota law, then they are offset by the $229 million. And so there is no reason to overturn the decision in that sense. We don't think you need to get there, though, of course, because we think the right decision is what the district court found, which was that this was an instance where you need to apply the federal procedural rule on taxation of costs, and that limits witness fees to the $40 a day per day of attendance fees. Your Honors, I can continue, but I don't know if you have any questions on this. I also don't need to just sit up here. I don't think so. I don't. Okay.  I don't think we do have any more questions. Okay. Thank you, Your Honors. Thank you, Counsel. Ms. Wick, you have a bit of rebuttal time remaining. May it please the Court. I'd like to just start by reframing what the trial was about. The trial was not simply about the two defendants who were there at the defendant's table, Hanstar and Toshiba. The trial was about how Best Buy had been harmed by the conspiracy as a whole and that Best Buy had been injured by the totality of the actions of the conspiracy. And that meant that a huge amount of the evidence in the trial was about Best Buy explaining all of its direct and indirect purchases and how the conspiracy had operated as a whole. I just wanted to make that clear, that the focus of the trial was the conspiracy as a whole and how Best Buy had been harmed. There was some particular defendant-specific time and that was a factor that the Special Master used and backed out some fees that were particular to Toshiba. That was a very small portion because, again, the bulk of the trial was spent on proving how Best Buy had been injured from the conspiracy as a whole and demonstrating that breakdown. Moving to something that was noted by my opposing counsel, that there's some tension between recognizing that there's part of a remedy for an injury under the Minnesota Antitrust Act, including costs and disbursements, and that making it an issue of damages that's somehow vulnerable to an offset. It was clear in this instance that something that is in the ER at 12, the Special Master's document submitted by Hansdahr in post-trial briefing, that the express terms of the prior settlements with the other co-defendants did not include attorneys' fees and costs. Those settlements, they specifically stated that the parties would be covering their own fees and costs. And what that means is that Best Buy did not recover any of these amounts that we were bringing forth to you today and that were sought in these post-trial briefs. That is not, there's no double counting here. Those, Best Buy chose to settle for the amounts that it did with those co-defendants on those express contractual settlement terms because it retained the right to seek its fees and costs and be made whole for the totality of the injury that it sustained. And so there's no double counting. Thank you, counsel. The case just argued is submitted, and again, we appreciate your arguments. They've been most helpful. With that, we stand adjourned.
judges: Graber, Wardlaw, Marquez